United States District Court
Southern District of Texas

**ENTERED**

May 15, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| MCKINSEY SELLERS, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-25-4445 |
| | § | |
| HOUSTON AREA WOMEN'S CENTER, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

McKinsey Sellers worked at the Houston Area Women's Center, which serves women, children, and families escaping domestic violence, sexual assault, and sex trafficking. Sellers, a 60-year-old Black man, was a maintenance worker at the Center from February 2022 to November 2024, when he was fired. Sellers's first amended complaint asserts ten different causes of action against the Center based on his termination. The Center has moved to dismiss and to strike Sellers's response to the motion to dismiss. (Docket Entry Nos. 3, 6). After Sellers missed the court's deadline to file an amended pleading, (Docket Entry No. 19), the Center moved to reurge the motion to dismiss, (Docket Entry No. 20). Sellers then filed a motion for leave to file a second amended complaint, (Docket Entry No. 21), which the Center opposed, (Docket Entry No. 23). Based on the motions, the pleadings, and the applicable law, the court grants the motion to dismiss, denies the motion to strike, denies as moot the motion to reurge the motion to dismiss, and denies the motion for leave to file a second amended complaint. This case is dismissed, with prejudice, because further leave to amend would be futile. The reasons for these rulings are set out below.

## I.    Background

Sellers began working at the Center in February 2022.  (Docket Entry No. 1-3 at 36).[1] During his roughly two-and-one-half years of employment at the Center, Sellers received a "merit-based" increase in his salary.  (*Id.*).  Sellers asserts that he was "frequently instructed to perform tasks outside of his maintenance job description," including transporting clients and employees to off-site events.  (*Id.*).  Sellers states that he also repeatedly told the Center about various security issues on the property, such as malfunctioning locks, and that the Center "failed to address these hazards."  (*Id.* at 37).  He notes that he was one of only two male maintenance staff working in a predominantly female facility serving survivors of abuse and asserts that the Center "failed to implement basic safeguards," such as requiring escorts for male staff in sensitive areas until after his termination.  (*Id.*).

On October 31, 2024, Sellers was "abruptly placed on administrative leave" without a formal explanation.  (*Id.* at 38).  He found out that a resident had accused him of sexual assault.  (*Id.*).  He states that this claim was physically and factually impossible and that the Center should have reviewed surveillance footage and keycard access systems that would have exonerated him, "yet no review or transparency regarding this evidence was provided."  (*Id.*).  Sellers voluntarily provided a DNA sample to the Houston Police Department.  (*Id.*).  On November 26, 2024, the Center terminated Sellers, despite no charges being filed.  (*Id.*).  The only other male maintenance worker had also been placed on leave but was promptly reinstated.  (*Id.*).

Sellers also alleges that in connection with the administrative appeal of his eligibility for unemployment benefits, the Center's representatives "made knowingly false statements" to the

---

[1] The facts are taken from the first amended complaint, which is the operative complaint.  Because both the original complaint and the amended complaint are included in a single combined exhibit attached to the notice of removal, the court uses page numbers rather than paragraph numbers when referencing the facts.

Texas Workforce Commission, suggesting that he had violated company policies by performing non-maintenance tasks, even though management had directed him to do so. (*Id.*). He also alleges that the Center falsely reported to the Texas Workforce Commission that charges were pending against him. (*Id.*).

Sellers then sued the Center based on his termination.[2] The first amended complaint alleged: (1) wrongful termination under Texas law; (2) hostile work environment in violation of Texas Labor Code § 21.051; (3) retaliation in violation of Texas Labor Code § 21.055; (4) negligence (erroneously titled as "constructive eviction"); (5) negligent supervision and retention under Texas common law; (6) age discrimination in violation of the Texas Commission on Human Right Act (THCRA) and Age Discrimination in Employment Act (ADEA); (7) race and national origin discrimination in violation of Texas Labor Code § 21.051; (8) failure to prevent harassment and discrimination under Texas law; (9) and intentional infliction of emotional distress. (*Id.*). (Docket Entry No. 1-3 at 40–58). The Center moved to dismiss. (Docket Entry No. 3). Although it was not explicitly listed as one of the nine causes of action, the Center construed the amended complaint as also bringing a defamation claim.[3] (*Id.* at 18). Sellers responded to the motion to dismiss. (Docket Entry No. 5). The Center moved to strike Sellers's response for failure to comply with this court's procedures, including a 25-page limit and the need to include a table of contents. (Docket Entry No. 6). Sellers did not respond to the motion to strike.

---

[2] He also sued Does 1–25; no Does were ever identified or served.

[3] The first amended complaint also mentioned Texas Penal Code § 37.10, (Docket Entry No. 1-3 at 39, 40), and the Center moved to dismiss a claim based on this statute as well, (Docket Entry No. 3 at 20). Sellers clarified in his response to the motion to dismiss that he was not asserting a separate claim based on a violation of Texas Penal Code § 37.10 because it does not have a private right of action. (Docket Entry No. 5 at 34). This potential claim is not addressed further because Sellers has abandoned it.

On January 30, 2026, the court held an initial conference and entered a scheduling order. (Docket Entry Nos. 18, 19). Sellers's counsel indicated at the initial conference that he planned to amend. (Docket Entry No. 18). The scheduling order set a February 20, 2026, deadline for further amendment. (Docket Entry No. 19). Sellers did not file by that date. On March 3, 2026, the Center moved to reurge its motion to dismiss. (Docket Entry No. 20). On March 23, 2026, Sellers filed a motion for leave to file a second amended complaint, explaining that he had missed the deadline because his lead counsel was preparing to take another bar examination and that, in the counsel's absence, the counsel's paralegal had failed to properly docket the proposed second amended complaint. (Docket Entry No. 21; *see also* Docket Entry Nos. 21-1, 21-2).

The proposed second amended complaint does not materially alter the factual allegations. (*See generally* Docket Entry No. 21-3). Instead, the proposed second amended complaint adds a claim for "sex discrimination/discriminatory discharge" under Title VII and Chapter 21 and for "defamation/defamation per se"; keeps the ADEA and Chapter 21 claim for age discrimination (which is also listed as a "discriminatory discharge" claim); and adds that claim for retaliation is also brought under Title VII. (*Id.*). The proposed second amended complaint drops the remaining claims. The Center opposes the motion for leave. (Docket Entry No. 23).

## II.    The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require

4

'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks omitted, alterations adopted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

## III.   Analysis

### A.  The Motion for Leave to File a Second Amended Complaint

Once a court has entered a scheduling order and the deadline for amending pleadings has passed, the decision to permit post-deadline amendments is governed by Rule 16(b) of the Federal

Rules of Civil Procedure.[4]  *S&W Enters., LLC v. S. Tr. Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003) ("We take the opportunity to make clear that Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired.'").  Under Rule 16(b), a scheduling order should not be modified unless there is a showing of good cause.  FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

The Fifth Circuit has set forth four factors to determine whether a movant has established good cause to modify a scheduling order to allow an untimely amendment of pleadings: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."  *S&W Enters., L.L.C.*, 315 F.3d at 536 (cleaned up) (quoting *Reliance Ins. Co. v. La. Land Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997)).  "The 'good cause' standard focuses on the diligence of the party seeking a modification of the scheduling order." *Forge v. City of Ball*, No. 3:03-CV-0256, 2004 WL 1243151, at *2 (N.D. Tex. June 4, 2004). "Mere inadvertence on the part of the movant and the absence of prejudice to the non-movant are insufficient to establish 'good cause.'" *Id.*  "The movant must show that 'despite his diligence, he could not have reasonably met the scheduling deadline.'" *Id.* (quoting *Am. Tourmaline Fields v. Int'l Paper Co.*, No. 3:96-CV-3363, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998)).

The court denies the motion for leave to file a second amended complaint.  As to the first factor, Sellers's reason for missing the deadline to amend is that his lead counsel was out of the

---

[4] Although Sellers's motion seemingly assumes that Rule 16 does *not* apply (*see* Docket Entry No. 21 at 3–4 (first explaining the Rule 6 and Rule 15 standard and then stating "[t]o the extent the missed amendment deadline is treated as a scheduling order deadline . . .")), the deadline for leave to amend pleadings is plainly a scheduling order deadline.  In any event, inadvertence does not usually constitute excusable neglect under Rule 6.  *See, e.g.*, *Vertigo Artography, LTD v. Champagne Cowgirl, LLC*, No. 3:24-cv-120-BN, 2024 WL 4668550, at *3 (N.D. Tex. Nov. 4, 2024).  For largely the same reasons as detailed above with regard to Rule 16 and Rule 15, Sellers has not met the Rule 6 standard, either, and the court would not exercise its discretion to extend the deadline.  *See McCarty v. Thaler*, 376 F. App'x 442, 443 (5th Cir. 2010).

office during the month of February taking a bar exam, and that his paralegal did not realize that the second amended complaint had not been docketed. (Docket Entry No. 21 at 4–5). This explanation is insufficient on multiple grounds. It asserts inadvertence, which is "tantamount to no explanation at all." *S&W Enters., LLC*, 315 F.3d at 536. In addition, Sellers offers no explanation for failing to include the new claims in either his original complaint or his first amended complaint, or for the nearly year-long delay in seeking to add these new claims; the added claims for "sex discrimination/discriminatory discharge" and "defamation/defamation per se" (to the extent that defamation may be considered a new claim) are based on the same facts that Sellers has known from the start. *See id.* (noting that the plaintiff's explanation was insufficient in part because it had known the same facts from the beginning and failed to explain why it waited so long to add a claim that could have been asserted from the start); *see also Thomas v. Group 1 Automotive, Inc.*, Civ. Action No. H-23-1416, 2024 WL 1962890, at \*2 (S.D. Tex. May 3, 2024) ("Thomas offers no explanation for failing to include an ERISA claim in his original pleading, or for the year-long delay in seeking to amend to do so. It is clear Thomas knew of the claim even before he filed his lawsuit."). The Fifth Circuit law is clear that an attorney's "inattention to the particulars of" a case can be, on its own, a sufficient reason to deny a motion for leave to amend. *Banks v. Spence*, 114 F.4th 369, 372–73 (5th Cir. 2024) (en banc); *see also Malhotra v. State Farm Lloyds*, SA-23-CV-780-JKP (HJB), 2024 WL 4101931, at \*2 (W.D. Tex. July 29, 2024).

In any event, a holistic consideration of the remaining factors weighs heavily against finding good cause. Even assuming *arguendo* that the proposed amendment is important, the third and fourth factors weigh against Sellers. *See Grant v. Rathburn*, 3:15-CV-4025-D, 2016 WL 1750572, at \*4 (N.D. Tex. May 3, 2016). As to the third factor, the Center will be prejudiced by having to consider "whether a different strategy and approach would be needed," since it has

7

litigated the case on the assumption, at a minimum, that Sellers would not be bringing his "sex discrimination/discriminatory discharge" claim. *Thomas*, 2024 WL 1962890, at *3. Adding new claims at this point—after nearly a year of litigation and one amendment already—"would trigger additional motions, responses, and delays." *See Mobius Risk Grp., LLC v. Global Clean Energy Holdings, Inc.*, No. H-10-1708, 2012 WL 527939, at *6 (S.D. Tex. Feb. 16, 2012). That prejudice "is neither minimal nor easily curable, even with a short continuance." *Thomas*, 2024 WL 1962890, at *3. Sellers's argument that the allegations forming the basis of his new claims "have been known from the outset," (Docket Entry No. 21 at 7), does not establish good cause: "[t]o the contrary, this argument demonstrates that [Sellers] could have asserted" these claims claim when he asserted his other claims. *Mobius Risk Grp., LLC*, 2012 WL 527939, at *6. There is no good cause to allow Sellers to amend his complaint past the deadline to do so.

Even under Rule 15, the court would not grant leave to amend. *Thomas*, 2024 WL 1962890, at *3. The "delay and prejudice here are undue," considering that Sellers waited nearly a year to add new claims, "which is dilatory and unexplained." *Id.* And the facts alleged in the proposed second amended complaint are not materially different from the facts alleged in the first amended complaint and would not alter the court's analysis of the pleading deficiencies. The court considers the facts alleged in the proposed second amended complaint to the extent that they demonstrate Sellers's continued failure to plausibly plead his claims. *See Pichardo v. Centene Co. of Tex.*, No. 7:19-cv-00085, 2020 WL 1308047, at *3 (S.D. Tex. Mar. 16, 2020) ("Nevertheless, in analyzing the motion to dismiss, the Court also considers Plaintiff's proposed second amended complaint in order to determine whether the second amended complaint states a claim for relief and whether amendment would be futile.").

The motion for leave to amend, (Docket Entry No. 21), is denied.

8

### B. Motion to Strike

The Center moves to strike Sellers's response brief based on the lack of compliance with the court's local rules. (Docket Entry No. 6). The Center points out that Sellers's brief was 13 pages over the court's 25-page limit and lacked both a table of contents and a table of authorities, as also required by the court's rules. (*Id.* at 1–2). The Center provides no rule or standard by which the court should analyze its motion. Although the court admonishes Sellers for failing to comply with the local rules, the court sees no need to strike the response brief under these circumstances. Considering Sellers's response brief does not change the court's analysis of the motion to dismiss. The motion to strike is denied.

### C. Motion to Dismiss

Sellers' first amended complaint contains a plethora of different claims against the Center. For the reasons explained below, the court dismisses all the claims because they fail to state a claim. Because further amendment would be futile, these claims are dismissed with prejudice.

### 1. Age Discrimination under the ADEA and Chapter 21

"To establish a prima facie case of [age] discrimination under [the ADEA and Section 21], the plaintiff must establish that 'she (1) was a member of the protected class [forty years of age or older], (2) was qualified for the position at issue, (3) suffered a final, adverse employment action, and (4) was either (a) replaced by someone [outside the protected class] or (b) otherwise treated less favorably than others who were similarly situated but outside the protected class.'" *Norsworthy v. Houston Indep. Sch. Dist.*, 70 F.4th 332, 337 (5th Cir. 2023). "To establish that a younger employee is 'similarly situated,' a plaintiff must show 'nearly identical' circumstances. *Gonzales v. Wells Fargo Bank, Nat'l Ass'n*, 733 F. App'x 795, 797 (5th Cir. 2018). "[T]he employees being compared must have the same job or responsibilities, share the same supervisor

or have their employment status determined by the same person, and have comparable violation histories." *Allen v. U.S. Postal Serv.*, 63 F.4th 292, 301–02 (5th Cir. 2023).

At the motion to dismiss stage, the court "does not conduct an in-depth analysis of whether the plaintiff's alleged comparators are actually 'similarly situated'; rather, the plaintiff 'need only plausibly allege facts going to the ultimate elements of the claim.'" *Legacy Equity Advisors, LLC v. AT&T, Inc.*, No. 3:23-CV-0979-D, 2023 WL 6049753, at *6 (N.D. Tex. Sep. 15, 2023). "But a complaint that 'generally alleges that other similarly situated individuals were treated differently,' 'without more, is merely a legal conclusion that [the court is] not required to credit.'" *Id.* (alteration in original) (quoting *Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018)). To frame the inquiry as to whether a plaintiff has plausibly pleaded an employment discrimination claim, a court "may find it helpful to reference" the *McDonnell Douglas* burden-shifting framework. *Norsworthy*, 70 F.4th at 336.

Sellers has argued that a younger male coworker, Daniel, is a proper comparator. But the only information in the first amended complaint is that Daniel was (1) younger, (2) also a maintenance worker of some sort, and (3) allowed to return to work after being placed on leave, although there is no actual allegation in the first amended complaint that Daniel was ever directly accused of assault the way that Sellers was directly accused of assault.[5] (Docket Entry No. 1-3 at 38, 51). Sellers asserts that Daniel's reinstatement was "direct evidence of discriminatory bias based on age." (*Id.* at 39). First, Sellers's allegations concern circumstantial evidence of discrimination, not direct evidence, because the court must draw the inference that Sellers was

---

[5] The first amended complaint states that Sellers' accuser had made the "implausible claim that Mr. Sellers had scaled a 12-foot wall, entered the women's quarters, assaulted multiple individuals, and exited undetected." (Docket Entry No. 1-3 at 38). There is no allegation in the first amended complaint that Daniel was ever accused of similar conduct, only that he was also placed on leave.

terminated because of his age.[6]  *See Acker v. Deboer, Inc.*, 429 F. Supp. 2d 828, 837 (N.D. Tex. 2006).  Second, Sellers has not "plead[ed] circumstantial facts supporting the inference that [he] was 'similarly situated' to" Daniel.  *See Burchfield v. S. La. Med. Assocs.*, Civ. Action No. 23-1501, 2023 WL 5952183, at *6 (E.D. La. Sep. 13, 2023).  While "[i]t is true that when a plaintiff plausibly alleges similarly situated comparators, the Court must not scrutinize whether the comparators are 'really "similarly situated"' on a motion to dismiss," "the lack of *any* factual basis for this element" means that Sellers' claim does not survive a motion to dismiss.  *Id.* (quoting *Cicalese*, 924 F.3d at 768).  Among other issues, there are no allegations that Daniel even had the same work responsibilities, or shared the same supervisor, or any other indication that their jobs and circumstances (including violation histories) were sufficiently similar; the court does not assume that all maintenance workers are the same.  The bare facts as pleaded are insufficient for this claim to proceed past the motion to dismiss because they do not plausibly demonstrate that Sellers was terminated *because of* his age.

The proposed second amended complaint shows that granting leave to amend would be futile.  The first amended complaint does not refer to exhaustion or Sellers's EEOC Charge.  *See Gunter v. XTO Energy*, No. H-25-6356, 2026 WL 1138367, at *4 n.5 (S.D. Tex. Apr. 21, 2026).  But the proposed second amended complaint *does* mention exhaustion and the EEOC charge.[7] (Docket Entry No. 21-3).  Because Sellers has now put the issue of exhaustion before the court, it may analyze the futility of amendment based on exhaustion.  *See Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) ("An amendment is futile if it would

---

[6] Later in the first amended complaint, Sellers asserts that he has "not alleged direct ageist comments," and that his claims should be viewed under *McDonnell Douglas*.  (Docket Entry No. 1-3 at 52).

[7] The same exhaustion requirements apply to ADEA, Title VII, and Chapter 21 claims.  *See Jones v. Driver Pipeline*, No. 3:25-cv-0121, 2025 WL 1908301, at *3 (N.D. Tex. July 10, 2021); *Ray-Sampson v. Uplift Educ.*, No. 3:24-cv-2967-E-BN, 2026 WL 827473, at *6 (N.D. Tex. Feb. 2, 2026), *report and recommendation adopted*, 2026 WL 825517 (N.D. Tex. Mar. 25, 2026).

fail to survive a Rule 12(b)(6) motion."); *Lubeno v. Office Depot, L.L.C.*, No. 22-50767, 2023 WL 4249268, at *3 (5th Cir. June 29, 2023) (a court may dismiss for failure to exhaust if such failure is evident on the face of the complaint); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (at the motion to dismiss stage, courts can consider documents attached to the motion that are central to the claim and referenced in the complaint).[8]

To determine whether a claim has been exhausted, courts "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Pachecho v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006). Exhaustion is determined "not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Id.* (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). This rule "protects unlettered lay persons making complaints without legal training or the assistance of counsel." *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993).

Sellers's EEOC Charge asserted that he was discriminated against based on his sex and retaliation. (Docket Enry No. 3-1). He made no references to his age outside of providing his birth year as required in the personal information section. (*Id.*). Sellers's Charge alleged that management ignored his concerns about security issues, put him on leave, and then terminated him. (*Id.* at 3). Nothing in the Charge would have reasonably led to an investigation into discrimination based on age. Even reading the EEOC Charge "somewhat broadly," the court cannot conclude that Sellers's allegations could "reasonably be expected" to trigger an investigation into age discrimination. *See Pacheco*, 448 F.3d at 792; *accord Ford v. Pangea Int'l Trading Co.*, Civ. Action No. H-25-916, 2025 WL 2977978, at *3 (S.D. Tex. Oct. 21, 2025).

---

[8] Sellers' EEOC Charge was attached to the Center's motion to dismiss. (Docket Entry No. 3-1).

Simply including a birthday that makes a plaintiff's age over 40 years old in an EEOC Charge is insufficient to exhaust a claim for age discrimination.

The age discrimination claims are dismissed, with prejudice, because further amendment would be futile. These claims are now time-barred because Sellers did not file a charge of discrimination within the required time period.[9]

### 2. Race and National Origin Discrimination

The same flaws that apply to Sellers's claim for age discrimination apply to his claims for race and national origin discrimination. To state a prima facie case for national origin or race discrimination under Chapter 21, Sellers must plead facts that could show four elements: that he is (1) a "member of a protected class"; that he "was qualified for the position at issue"; (3) that he "was the subject of an adverse employment action by the employer"; and (4) that he "was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Banda v. Owens Corning Corp.*, No. 3:17-CV-1787-B, 2018 WL 6726542, at *7 (N.D. Tex. Dec. 21, 2018). The same "similarly situated" requirements detailed above for age discrimination also apply to race and national origin discrimination. *See, e.g.*, *id.*

Sellers has alleged that he is Black and Daniel is not.[10] (Docket Entry No. 1-3 at 53). But, as detailed above, there is little else in the complaint to show that Daniel is sufficiently similarly

---

[9] The events giving rise to Sellers's allegations occurred in late 2024. "In Texas, 'a Title VII plaintiff must file a charge of discrimination within 300 days of the alleged discriminatory act.'" *See Ford*, 2025 WL 2977978, at *4 (quoting *Doe v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 653 F. Supp. 3d 359, 371 (S.D. Tex. 2023)). There is an even shorter period for exhausting administrative remedies under Chapter 21: 180 days rather than 300. *Id.* (citing TEX. LAB. CODE § 21.202(a)). It is now May 2026, well past the time period for filing a charge for the allegations described in the complaint.

[10] The proposed second amended complaint does not allege Daniel's race. (*See generally* Docket Entry No. 21-3). The first amended complaint alleges that Daniel is "non-Black." (Docket Entry No. 1-3 at 53).

situated for the purpose of pleading race and national origin discrimination claims.  The first amended complaint does not plausibly demonstrate that Sellers was terminated *because of* his race and national origin.  And the failure to exhaust shows that leave to amend would be futile.  Sellers mentions neither race nor national origin in his EEOC Charge and there is nothing in the Charge that would have put the Center on notice that the EEOC's investigation could include race and national origin discrimination.  These claims are now time-barred.

These claims are dismissed, with prejudice, because amendment would be futile.

### 3.  Hostile Work Environment

"[A] hostile work environment claim requires (1) membership in a protected group; (2) harassment; (3) based on a factor rendered impermissible by Title VII; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment yet failed to address it promptly." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012).[11]  "A hostile work environment claim must be supported by harassment 'sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive work environment.'" *Mueblas-Curtis v. Am. Airlines, Inc.*, No. 3:25-CV-1201-D, 2025 WL 3022852, at *5 (N.D. Tex. Oct. 29, 2025) (quoting *Walton-Lentz v. Innophos, Inc.*, 476 F. App'x 566, 570 (5th Cir. 2012) (per curiam)).

Among other issues, Sellers has not pleaded that he was subject to such pervasive harassment that a term or condition of his employment was affected.  That Sellers was a man in a female-oriented space; that he complained about broken locks; and that he was later investigated for sexual assault are not allegations that establish a claim for hostile work environment.  To the

---

[11] Courts analyze Chapter 21 hostile work environment claims under the Title VII framework. *See Tapley v. Simpliefile, LC*, No. 3:19-cv-00227-E, 2020 WL 208817, at *4 (N.D. Tex. Jan. 14, 2020).

extent that any action Sellers complains of could even be considered harassment or discrimination under Chapter 21, these "limited discrete acts" do not show a hostile work environment. *Id.* The hostile work environment claim is dismissed, with prejudice, because further amendment would be futile; this claim is unexhausted and time-barred. Nothing in the EEOC Charge would have put the Center on notice that the EEOC Charge could grow to include hostile work environment claims.

### 4. Retaliation

"A retaliation claim is related to, but distinct from, a discrimination claim, and one may be viable even when the other is not. Unlike a discrimination claim, a retaliation claim focuses on the employer's response to an employee's protected activity, such as making a discrimination complaint." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 763–64 (Tex. 2018). "A protected activity includes (1) opposition to any practice rendered unlawful by Chapter 21 and (2) participation in an investigation, proceeding, or hearing under Chapter 21 or making a charge, testifying, or assisting in such activity." *Bates v. Caliber Holdings LLC*, No. 3:25-cv-1831, 2025 WL 3454211, at *6 (N.D. Tex. Oct. 29, 2025), *report and recommendation adopted*, 2025 WL 3452649 (N.D. Tex. Dec. 1, 2025). Chapter 21 protects the following four activities: (1) opposing a discriminatory practice, (2) making or filing a charge, (3) filing a complaint, or (4) testifying, assisting, or participating an investigation, proceeding, or hearing. TEX. LABOR CODE § 21.055; *see also Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 525 (5th Cir. 2021). It protects only an employee who is retaliated against "under this chapter." TEX. LABOR CODE § 21.055.

Sellers alleges that he was retaliated against after he raised security concerns about broken door locking mechanisms, bypassed security systems, and compromised access to sensitive areas. (Docket Entry No. 1-3 at 45). Even assuming that Sellers was terminated because he complained about security issues, that is not conduct protected by Chapter 21. Courts have rejected Chapter

15

21 retaliation claims based on complaints that did not involve discrimination, because "Chapter 21 applies to conduct 'under [that] chapter'—that is, employment discrimination based on 'race, color, disability, religion, sex, national origin, or age.'" *Garrett v. Judson Indep. Sch. Dist.,* No. SA-06-CA-0174 OG(NN), 2007 WL 1490643, at *5 (W.D. Tex. May 20, 2007), *report and recommendation adopted sub nom. Garrett v. Ruffin*, 2007 WL 9702934 (W.D. Tex. Sept. 12, 2007), *aff'd sub nom. Garrett v. Judson Indep. Sch. Dist.*, 299 F. App'x 337 (5th Cir. 2008). That Sellers was a man working in a facility serving women, children, and families does not transform his complaints about security systems into conduct protected by Chapter 21. *See id.*; *see also Bates*, 2025 WL 3454211, at *5–6 (collecting cases and concluding that there was no Chapter 21 retaliation claim because none of the allegations in the plaintiff's internal complaints could be construed as constituting an opposition to an unlawful employment practice).

The retaliation claim is dismissed, with prejudice, because amendment would be futile.

### 5. Wrongful Termination

Although Sellers brings a claim for "wrongful termination under Texas law," (Docket Entry No. 1-3 at 40), that is not a viable independent cause of action under the common law. "Texas state law does not recognize a separate common law cause of action for wrongful termination." *Stoker v. Trinity Indus. Plant 19*, No. 216CV00578JRGRSP, 2017 WL 988140, at *3 (E.D. Tex. Feb. 10, 2017) (citing *Winters v. Houston Chronicle Publishing Co.*, 795 S.W.2d 723, 723–25 (Tex. 1990)), *report and recommendation adopted*, 2017 WL 978734 (E.D. Tex. Mar. 14, 2017)). Rather, because Texas follows the at-will employment rule, under which employment for an indefinite term may be terminated with or without cause, "[a]n action for wrongful termination is only available to a[n] employee who falls within one of a few common law exceptions to the employment at-will doctrine." *Griffth v. Kroger*, No. 9:05-CV-76-TH, 2008 WL

16

11347989 (E.D. Tex. Mar. 7, 2008).  Sellers has pointed to no applicable exception and the court sees none.[12]  Sellers does not have a cause of action for "wrongful termination" under the common law.  To the extent that Sellers is attempting to assert "wrongful termination" based on employment discrimination prohibited by Texas statute, that is duplicative of his Chapter 21 discrimination claims.[13]   This claim is dismissed, with prejudice, because amendment would be futile.

### 6.   Intentional Infliction of Emotional Distress

"To prevail on a claim for intentional infliction of emotional distress, Texas law requires the plaintiff to prove the following: (1) that the defendant acted intentionally or recklessly, (2) that the defendant's conduct was extreme and outrageous, (3) that the actions of the defendant caused the plaintiff emotional distress, and (4) that the emotional distress suffered was severe." *Johnson v. Merrell Dow Pharms., Inc.*, 965 F.2d 31, 33 (5th Cir. 1992) (per curiam).  "[T]he intentional infliction of emotional distress was, first and foremost, a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).  "[I]f the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff cannot main an intentional infliction [of emotional distress] claim regardless

---

[12] One such exception allows an at-will employee to sue for retaliatory discharge for refusing to commit an illegal act. *See Griffith*, 2008 WL 11347989, at *4.

[13] The cases that Sellers cites to in the first amended complaint may use the term "wrongful termination," but they are actually about discrimination claims under Chapter 21; "wrongful termination" is not a separate cause of action. *See, e.g.*, *Hudgens v. Univ. of Tex. Md Anderson Cancer Ctr.*, 615 S.W.3d 634, 642 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (using "wrongful termination" to describe an age discrimination claim"); *Bell Helicopter Textron, Inc. v. Burnett*, 552 S.W.3d 901, 924 (Tex. App.—Fort Worth 2018, pet. denied) (Pittman, J., dissenting) (same).

of whether he or she succeeds on, or even makes, a statutory claim." *Powells v. 1600 West Loop South, LLC*, Civ. Action No. H-23-3790, 2024 WL 1769350, at *4 (S.D. Tex. Apr. 23, 2024).

Sellers's claim for intentional infliction of emotional distress is based on the Center's "baseless and humiliating accusations of sexual assault." (Docket Entry No. 1-3 at 57). Even setting aside the statutory duplication issue, Sellers has not met the extraordinarily high standards for a claim for intentional infliction of emotional distress. Such claims require conduct to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of human decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 817–18 (Tex. 2005) (quoting reference omitted). The first amended complaint alleges that the Center received an accusation that Sellers committed an assault, failed to properly investigate that accusation, and then fired him. The Center did not make the accusation, but allegedly "rushed to judgment." (Docket Entry No. 1-3 at 57). That is not the kind of "outrageous" conduct that can form the basis of a claim for intentional infliction of emotional distress. A "rush to judgment" is not utterly intolerable in a civilized community.

This claim is dismissed, with prejudice, because amendment would be futile.

### 7. The Negligence Claims

Sellers also raises a variety of negligence-based claims (some of which are confusingly—and seemingly accidentally—described under the header "constructive eviction"). These claims include negligence, negligent hiring, negligent supervision, and negligent retention. These claims are generally duplicative of Sellers' statutory claims and may be dismissed on that basis alone. *See Light v. Pepperidge Farm*, No. 4:23-cv-01177-P, 2024 WL 1703714, at *2 (N.D. Tex. Apr. 19, 2024). Regardless, Sellers has not plausibly pleaded any of his negligence-based claims.

18

The premise for all the negligence-based claims is that the Center breached a duty to Sellers by failing to protect him from the third party who accused him of sexual assault. But that inverts the basis for negligent supervision, negligent hiring, and negligent retention claims. All three types of claims involved an employer's duty to protect a third party from an employee. *See, e.g.*, *Samilton v. F2F Transp., LLC*, No. 3:24-CV-2757-K, 2026 WL 1146291, at *4 (N.D. Tex. Apr. 28, 2026) (explaining that negligent hiring, supervision, and retention claims "require the plaintiff to prove (1) the employer was negligent in hiring, supervising, or retaining the employee and (2) that the employee committed an independent, actionable tort against the plaintiff"). Sellers has provided no basis for the court to swap parties and base such negligence claims in the employer's failure to protect an *employee* from a third-party tortfeasor. To the extent that the basis of Sellers's allegation is also that other Center employees should have investigated the sexual assault claims more thoroughly before terminating him, Sellers has not plausibly alleged that any Center employee committed an independent, actionable tort against him. There is also no plausible allegation that the Center breached any legal duty to Sellers in these circumstances by failing to improve its security systems. *See McDorman ex rel. Connelly v. Texas-Cola Leasing Co. LP, LLP*, 288 F. Supp. 2d 796, 804 (N.D. Tex. 2003) (listing the elements of an ordinary negligence claim).

The negligence claims are all dismissed, with prejudice, because amendment would be futile.

### 8. Failure to Prevent Harassment and Discrimination

Sellers also alleges a claim for "failure to prevent harassment and discrimination under Texas law." (Docket Entry No. 1-3 at 54). None of the cases he cites, however, establish that there is a statutory or common law cause of action for "failure to prevent harassment." (*Id.* at 54–55 (citing *Hoffman-La Roche*, 144 S.W.3d at 442 (reviewing the overlap between a statutory claim

for sexual harassment and a common law claim for intentional infliction of emotional distress); *Nardini v. Cont'l Airlines, Inc.*, 60 S.W.3d 197, 201 (Tex. App.—Houston [14th Dist. 2001, pet. denied) (examining a Chapter 21 hostile work environment claim and a ratification claim); *Lucan v. HSS Sys., LLC*, 439 S.W.3d 606, 613 (Tex. App.—Eastland 2014, no pet.) (reviewing a Chapter 21 retaliation claim); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796 (Tex. 2010) (analyzing a sexual harassment claim under Chapter 21 and common-law negligent supervision and retention claims)). Sellers has not pleaded facts that could support a claim for "failure to prevent harassment and discrimination." This claim is dismissed, with prejudice, because amendment would be futile.

### 9. Defamation

Although Sellers does not list defamation as a separate cause of action in his first amended complaint, he does include a section on defamation, and the Center's motion to dismiss construes the amended complaint as bringing a defamation claim. (Docket Entry No. 3 at 18). The basis for the defamation claim in the first amended complaint is that representatives of the Center made knowingly false statements to the Texas Workforce Commission. (Docket Entry No. 1-3 at 39). In his proposed second amended complaint, Sellers alters the basis for his defamation claim somewhat, asserting that he meant to bring a defamation claim based on the Center's publication of false statement of facts ("through its agents and employees") about his alleged sexual misconduct, immoral behavior, and violation of company policies. (Docket Entry No. 21-3 at 15).

The elements of defamation are that: (1) the defendant published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with malice, if the plaintiff was a public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statements. *See WFAA-TV Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). "A statement is 'published' if it is communicated to a third person who is capable of understanding its defamatory meaning

20

and in such a way that the person did understand its defamatory meaning." *Petersen v. Meta, Inc.*, No. 2:24-CV-00038, 2024 WL 4719714, at *10 (S.D. Tex. Sept. 4, 2024), *report and recommendation adopted*, 2024 WL 4608185 (S.D. Tex. Oct. 29, 2024), *appeal dism'd*, No. 25-40223, 2025 WL 2978784 (5th Cir. July 23, 2025). "To be viable, a claim must also specifically state the time and place of the publication and identify of the speaker." *Id.* (citing *Phillips N. Am. LLC v. Image Tech. Consulting LLC*, No. 3:22-CV-0147-B, 2024 WL 3184770, at *8 (N.D. Tex. June 26, 2024); *see also Jackson v. Dallas Indep. Sch. Dist.*, No. 398-CV-1079, 1998 WL 386158, at *5 (N.D. Tex. July 2, 1998).

To the extent that Sellers's defamation claim is based on the Center's statements to the Texas Workforce Commission, his allegations cannot support a defamation claim. Statements made in judicial proceedings are privileged under Texas law. "Even potentially perjured testimony is absolutely privileged and cannot form the basis of a subsequent action for libel." *Dick v. J.B. Hunt Transp., Inc.*, 772 F. Supp. 2d 806, 823 (N.D. Tex. 2011). This privilege applies equally to quasi-judicial proceedings before a Texas administrative body that has the "authority to redress grievances to which it takes cognizance." *Attaya v. Shoukfeh*, 962 S.W.2d 237, 239 (Tex. App.—Amarillo 1998, writ denied). Because this privilege extends to statements made to the Texas Workforce Commission, the allegedly false statements made to the Texas Workforce Commission cannot support a defamation claim. TEX. LAB. CODE § 301.074; *see Hardwick v. Houston Lighting & Power Co.*, 881 S.W.2d 195, 198 (Tex. App.—Corpus Christi 1994, writ dism'd w.o.j.).

The proposed second amended complaint still fails to state a claim for defamation. Although Sellers does not entirely abandon his defamation claim based on the statements to the Texas Workforce Commission, he more clearly asserts that he is also bringing claims because the Center "published" false statements. (Docket Entry No. 21-3 at 15). But he does not identify any

21

particular speaker or any particular false statement.  His generic statements that "false" statements of fact "were" published by unspecified persons is insufficient to plead a claim for defamation against the Center.  *See Peterson*, 2024 WL 4719714, at \*10.  In addition, to the extent that Sellers' defamation claim is really a claim that Center employees were merely gossiping and speculating, that is not the kind of action for which the Center could be liable for defamation.  *See Westfall v. GTE North Inc.*, 956 F. Supp. 707, 714 (N.D. Tex. 1996).

The defamation claim is dismissed, with prejudice, because further amendment would be futile.  Sellers has had multiple opportunities to plausibly plead a defamation claim and has failed to do so.

## IV.    Conclusion

The court grants the motion to dismiss.  (Docket Entry No. 3).  The court denies the motion to strike.  (Docket Entry No. 6).  The court denies the motion to reurge the motion to dismiss as moot.  (Docket Entry No. 20).  The court denies the motion for leave to file a second amended complaint.  (Docket Entry No. 21).  This case is dismissed, with prejudice, because the facts alleged in the first amended complaint and the proposed second amended complaint show that further amendment would be futile.  Final judgment is separately entered.

SIGNED on May 15, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge